UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEBRUN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-849** |
| **LEDET** | **SECTION "L" (5)** |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss Plaintiff's Claim for lack of personal jurisdiction and improper venue by Defendant Sterling J. Ledet, at R. Doc. 5. Plaintiff has filed a memorandum in opposition, at R. Doc. 8. Defendant has filed a reply in further support of this motion, at R. Doc. 15, and Defendant filed a sur-reply, at R. Doc. 17.

### I.   BACKGROUND

This case arises from an investment agreement between Plaintiff Wallace Lebrun, Jr. and Defendant Sterling J. Ledet. Plaintiff asked the Defendant to invest some of his money into cryptocurrency. R. Doc. 1-1 at 3. Defendant is the nephew of the Plaintiff and the son of Defendant Judy Lebrun Mackles, the sister of the Plaintiff. *Id*.

Plaintiff alleges that he began transferring funds to Defendant in 2017 with the express intent that this money be used for investing on his behalf. *Id*. Plaintiff alleges that funds amount to at least $861,000, according to Defendant's own calculations, and had grown to the value of around $7,000,000 by 2022. *Id*. These funds were placed into two or more accounts that could only be accessed by Defendant. *Id*. Plaintiff alleges that on October 18, 2022, he demanded by telephone and in writing that all of his investments be liquidated and returned to him. *Id*. at 4. Plaintiff alleges that he provided account information for the return of the investments, but no

1

funds have been returned and Defendant has not given Plaintiff control of the accounts. *Id*. Further, he alleges, Defendant ceased communication with the Plaintiff after receiving a written request for the return of the funds. *Id*.

Plaintiff alleges that Defendant began communicating with Plaintiff again in January 2023 and agreed to meet with him in Jefferson Parish, Louisiana on February 8, 2023. *Id*. Plaintiff alleges that he was not able to attend this meeting due to poor health, but Maria Aurora Lebrun ("Ms. Lebrun"), Plaintiff's wife of twenty years, attended with legal counsel. *Id*. Plaintiff alleges that Ms. Lebrun showed Defendant a power of attorney document authorizing her to act on behalf of Plaintiff. *Id*. During this meeting, Plaintiff alleges, Defendant once again refused to return the investment and stated the investment does not only belong to Plaintiff, but also to descendants of Wallace C. Lebrun, who is Plaintiff's father and Defendant's grandfather. *Id*. at 5. Plaintiff alleges that he again made demands on February 8 and 9, 2023 for the return of the investment. *Id*. Subsequently, Plaintiff brought suit against Defendant for fraud, conversion, and breach of contract. *Id*. at 2.

In his Motion to Dismiss, Defendant recounts a contrasting series of events. From 2017 until 2022, he alleges, his contacts with Plaintiff were through telephone, email, and wire transfers. Defendant alleges that Plaintiff visited him in Georgia in 2017 to discuss the investing relationship. R. Doc. 5-1 at 2-3. Defendant alleges that Plaintiff wired a sum of money from Costa Rica to Defendant, and during his visit, Plaintiff expressed his interest in having the Defendant invest the wired funds into cryptocurrency so that he could generate wealth for his wife and children. *Id*. at 2. Plaintiff would go on to make multiple wire transfers to Defendant in 2017, but there were no terms regarding whether the investments would generate wealth. *Id*.

2

Defendant alleges that between 2017 and September 2022, Plaintiff (in Costa Rica) and Defendant (in Georgia) would communicate from time-to-time through telephone and email. *Id*.

On October 17, 2022, Defendant alleges, he received a call from two unknown persons, Mary Bryan and Claude Cuttito, who said they were planning to invest on behalf of Plaintiff. *Id*. at 3. Defendant alleges that Mary Bryan and Claude Cuttito showed unfamiliarity with the nature of many of the investment items that were in Plaintiff's portfolio, and that the contacts from Plaintiff contained "unnecessary urgency, unreasonable and irrational demands." *Id.* at 4. Defendant alleges that he had a phone call with Plaintiff on January 18, 2023, in which Plaintiff expressed fear that "he would be forced to sign something he did not wish to sign" and told Defendant of concerns regarding his diminished mental capacity. *Id.* Defendant alleges that this was the last contact he had with Plaintiff. *Id*. at 5. Since then, he alleges, he has only had contact with Plaintiff's wife, Ms. Lebrun. *Id*. Ms. Lebrun subsequently asked Defendant to meet her and Plaintiff in Metairie, Louisiana, because she and Plaintiff had to travel there. *Id*.

Defendant alleges that the Plaintiff did not show up to the meeting, on February 8, 2023, at the appointed time, but rather that Ms. Lebrun, Mary Bryan, and two lawyers appeared forty minutes late. *Id*. at 6. Plaintiff did not appear, and Defendant was told that Plaintiff had been diagnosed with COVID. *Id*. Defendant alleges that Ms. Lebrun, Mary Bryan, and the lawyers presented Defendant with a "purported durable power of attorney" executed two days before the meeting. *Id*. A written demand letter was sent to Defendant on February 9, 2023, and this suit was filed in the 24th Judicial District Court for the Parish of Jefferson on February 10, 2023 against Defendant and his mother, Judy Lebrun Mackles. R. Doc. 1-1 at 2.

Defendant removed this case to federal court on March 8, 2023, R. Doc. 1, and then filed the present motion on March 28, 2023. R. Doc. 5. In his removal petition, Defendant claims that

3

this action is removable under 28 U.S.C. § 1441(a), because complete diversity exists between Plaintiff and Mr. Ledet, and because the other Defendant—Ms. Mackles—is improperly joined. R. Doc. 1 at 7. Defendant alleges that there is "no factual overlap" between the claims Plaintiff makes against him for conversion, fraud, and breach of contract, and the paragraphs of the complaint regarding his mother, which establish only her familial relationship with Defendant. *Id.* Plaintiff has not filed a motion for remand. Defendant argues that this failure means that Ms. Mackles is "no longer a party to the action." R. Doc. 10-1 at 2. Plaintiff contests this, arguing that Ms. Mackles is an indispensable party and that removal does not dismiss her as a party. R. Doc. 13-2 at 2. The parties do not dispute that Mrs. Mackles is domiciled in Louisiana.

## II.     PRESENT MOTION

Defendant argues that this Court may not exercise jurisdiction over him because he does not have contacts with the forum state sufficient to constitute specific jurisdiction. *Id*. at 11. Defendant argues that he did not purposefully avail himself of the privilege of conducting activities in Louisiana because "his communications and discussions with his uncle were in person in Georgia or otherwise were over the telephone and e-mail while his uncle was in Costa Rica and Mr. Ledet was in Georgia." *Id.* Second, he argues, Plaintiff's claim does not arise out of Defendant's contacts with Louisiana, because the wire transfers and communications took place between Georgia and Costa Rica. *Id*. As a result, Defendant argues, it would not be reasonable or fair for this Court to exercise jurisdiction over him. *Id*.

Further, Defendant argues, venue is proper in Georgia—not in Louisiana—because Defendant is a domiciliary of Georgia and because "a substantial part of the events or omissions

4

giving rise to the claim" occurred there rather than Louisiana. *Id.* at 12. As a result, Defendant argues, this case should be dismissed. *Id.* at 13.

Plaintiff argues that Defendant obtained the investment funds "from a bank account in this district from a plaintiff domiciled in this district" and that he met with Plaintiff's agent in this district during the dispute about its return. R. Doc. 8 at 2. Further, he argues, "the parties are connected through a familial relationship originating in this district." *Id.* Finally, Plaintiff argues, Defendant's "refusal to return the investment" is related to a succession proceeding in the 24th Judicial District Court for the Parish of Jefferson. *Id*. Plaintiff argues that he is a domiciliary of Jefferson Parish because he maintains a residence, voter registration, dentistry license, and vehicle registration in the parish. *Id*. at 9. Essentially, Plaintiff argues that the dispute arose out of Mr. Ledet's view that the succession occurring in Jefferson Parish was unequal. *Id*. at 10. As a result, Plaintiff argues, it is appropriate for this Court to exercise jurisdiction over the Defendant. *Id*. at 11.

## III. LAW AND ANALYSIS

### A. Subject Matter Jurisdiction

Subject matter jurisdiction is "nonwaivable and delimits federal-court power" and therefore it "must be policed by the courts on their own initiative." *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). Defendant argues that Plaintiff's failure to file for remand within 30 days constitutes a waiver of Mrs. Mackle's presence in the action, R. Doc. 10-1 at 2, while Plaintiff argues that she is an "indispensable party" who has not been dismissed by removal. R. Doc. 13-2 at 2.

As a threshold matter, the Court notes that the removal statute requires a motion for remand must be made within 30 days after a matter is removed—unless the defect is subject

matter jurisdiction. 28 U.S.C. § 1447(c). That provision of the federal removal statute further states that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id.* As a result, it is appropriate for this Court to first consider whether this court has jurisdiction before it evaluates Defendant's motion to dismiss or transfer. As the Fifth Circuit has held:

> When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper. Indeed, until the removing party does so, the court does not have the authority to do more; it lacks the jurisdiction to dismiss the case on its merits. It must remand to the state court.

*Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004). Furthermore, the Fifth Circuit instructs that "as long as a nondiverse party remains joined, the *only* issue the court may consider is that of jurisdiction itself." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016).

The Court is mindful that the burden of persuasion on those claiming improper joinder is a "heavy one." *Travis v. Irby,* 326 F.3d 644, 649 (5th Cir. 2003). The court views "all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff and resolve[s] any contested issues of fact and any ambiguities of state law" in the plaintiff's favor. *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).

The Fifth Circuit's leading decision on improper joinder is *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568 (5th Cir. 2004) (en banc). *Smallwood* instructs that district courts may use one of two tests to determine whether a plaintiff has a reasonable basis for recovery under state law. *Id.* Under the first test, the Court conducts a "Rule 12(b)(6)-type analysis" to determine whether

6

the complaint states a plausible claim against the in-state defendant.[2] *Id.* Alternatively, when a plaintiff has indeed stated a claim but may have "misstated or omitted discrete facts that would determine the propriety of joinder" the Court may "pierce the pleadings and conduct a summary inquiry." *Id.*

In this instance, Plaintiffs have failed to state a claim against Ms. Mackles. Reading the Plaintiff's complaint in the light most favorable to him, he has made the following factual allegations about Ms. Mackles: 1) that she has previously engaged in business with her brother, the Plaintiff; 2) that she is the mother of Defendant Ledet; and 3) that she was the administratrix of the succession of her mother, about which Ledet made "allegations and misrepresentations" when he failed to return Plaintiff's money.[3] R. Doc. 1-1 at 6. Plaintiff states in his complaint that "additional discovery is warranted to determine Ms. Mackles' level of culpability in the acts of conversion, fraud, and bad faith breach by Ledet." *Id.* But this cannot be so: Plaintiff has not made a single allegation that Ms. Mackles had any sort of contract with Plaintiff to invest his funds, that she had held his funds or withheld money from him, that she has access to the cryptocurrency wallets he alleges Ledet is withholding, or even that she has had any sort of verbal or written contact with Plaintiff *or* Defendant about the funds Plaintiff seeks to have returned. The Plaintiff does not articulate a single factual allegation to suggest that Ms. Mackles has engaged in conversion, fraud, or bad faith breach of contract—or even that she had any sort of contract with the Plaintiff.

---

[2] *Smallwood* was decided in 2004, several years before the Supreme Court held, in *Twombly/Iqubal* that the federal pleading standard requires pleadings that state a "plausible" claim for relief. The Fifth Circuit has since clarified that the Rule 12(b)(6) plausibility standard in also employed in a Rule 12(b)(6)-type analysis assessing improper joinder. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 206 (5th Cir. 2016).
[3] In his reply memorandum regarding the current motion, Defendant attaches the docket sheet for the succession of Doris Marguerite Russell LeBrun, the mother of Plaintiff and Ms. Mackles. Judgment was entered in that matter in 1993. R. Doc. 15-1 at 1.

7

Because Plaintiff has not stated any claim against Ms. Mackles that could survive a 12(b)(6)-type analysis, this Court finds that she was improperly joined. Removal was thus proper, and this Court turns to the question of personal jurisdiction over the Defendant.

### B. Personal Jurisdiction

According to Federal Rule of Civil Procedure 12(b)(2), an action may be dismissed for lack of personal jurisdiction. To claim personal jurisdiction over nonresident defendants, two conditions must generally be met: (1) the state's long arm statute must allow service of process; and (2) personal jurisdiction does not violate the Due Process Clause of the 14th Amendment. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). The Louisiana long arm statute "extends to the limits allowed by Due Process." *Crosstex Energy Servs., LP v. Tex. Brine Co., LLC*, 253 So. 3d 806, 811 (La. Ct. App. 2017). To satisfy due process in terms of personal jurisdiction, the defendant must have minimum contacts with the forum, and the litigation must not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). It must not be unreasonable to require the defendant to defend a suit brought in the particular forum. *Id*. at 317.

Defendant argues that, in this instance, Plaintiff has not established that this Court may exert general or specific jurisdiction over him. General jurisdiction exists when the defendant has continuous and systematic contacts with the forum. *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 415 (1984). The Court must be able to determine that a defendant's contacts with the state are so strong that he is essentially at home in the forum state. *Monkton Ins. Servs., Ltd v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). For a forum to exercise specific personal jurisdiction over a defendant, the defendant must have purposefully directed his activities toward

the forum and the suit must have resulted from alleged injuries that relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

If a defendant is found to have the required contacts with the forum, the Court must weigh several factors to determine if the exercise of personal jurisdiction aligns with fair play and substantial justice. *Asahi Mental Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987). These factors include (1) the burden on the defendant, (2) the forum state's interests, (3) the plaintiff's interest in being granted relief, (4) the interstate judicial system's interest in coming to the most efficient resolution, and (5) the states' interest in the furthering of "fundamental substantive policies. *Id*. If the defendant is shown to have sufficient contacts with the forum, he must then present a "compelling case" that his circumstances would make an exercise of personal jurisdiction unreasonable. *Burger King*, 471 U.S. at 477. The plaintiff has the burden of showing that the Court has jurisdiction over the defendant when a nonresident defendant files a motion to dismiss for lack of personal jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985).

In this case, Defendant alleges that Plaintiff cannot demonstrate a *prima facie* case for general or specific jurisdiction over Defendant. R. Doc. 5-1 at 7, 9-11. Defendant argues that he does not have contacts with Louisiana that are continuous and systematic enough to support general jurisdiction. *Id*. at 9. Further, he argues, the claims against him do not arise out of or relate to contacts with Louisiana, so specific jurisdiction does not exist. *Id*. at 10. The Court will consider the defendant's arguments on the basis of general and specific jurisdiction in turn.

    1. **General Jurisdiction**

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924,

(2011). An individual's domicile is "the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom. . . ." *McCormick v. Aderholt*, 293 F.3d 1254, 1258 (11th Cir. 2002). Plaintiff acknowledges that Defendant is domiciled in Georgia. R. Doc. 8 at 7. Defendant has lived in Georgia since 1986, and he votes, works, pays taxes, and owns property in Georgia. R. Doc. 5-1 at 9. Defendant notes that he does not live, conduct business, own property, maintain any records, or vote in the state of Louisiana. *Id.* Plaintiff does not contest these facts, but argues that general jurisdiction exists because Defendant has continuous and systematic contacts with Louisiana through Mrs. Mackles, his mother. R. Doc. 8 at 6-7. Plaintiff contends that the succession proceeding of Doris Lebrun, which concluded 20 years ago, is the subject of allegations and misrepresentations made by Defendant. *Id*. Further, Plaintiff asserts that Defendant's communications with him, the investments, and the actions that led to this suit have been "continuous and systematic" since at least 2017. *Id*.

There is no case law to support Plaintiff's assertion that contact with a family member in another state would mean that an individual had "continuous and systematic" contacts in that state. Defendant is domiciled in Georgia, and his contact with Mrs. Mackles in Louisiana would not be sufficient to establish general personal jurisdiction over him in Louisiana.

2. **Specific Jurisdiction**

The Fifth Circuit has developed a three-step analysis to determine whether or not a defendant is subject to specific jurisdiction in that forum. The inquiry focuses on "(1) whether the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of

personal jurisdiction is fair and reasonable." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). Defendant suggests that, in this instance, none of these factors favor a finding of jurisdiction. R. Doc. 5-1 at 10. First, he argues that his activities were not directed toward Louisiana because all of his communications with Lebrun were done through telephone or email while Ledet was in Georgia and Lebrun was in Costa Rica. *Id*. at 10-11. Second, Defendant argues that Plaintiff's claim does not arise out of Defendant's contact with Louisiana because, other than their initial meeting in 2017, all of the wire transfers and communications were between Georgia and Costa Rica. *Id*. at 11. Third, Defendant asserts that considering these and other facts, the exercise of personal jurisdiction would not be fair or reasonable. *Id*.

Plaintiff argues that specific jurisdiction can be exercised over Defendant because he purposefully availed himself to the forum state. *Id*. at 8. Plaintiff asserts that Defendant took investment funds from Plaintiff's Louisiana bank account and then agreed to meet with Plaintiff in Louisiana. *Id*. Plaintiff argues that the succession of Doris Lebrun, which took place in Jefferson Parish, Louisiana, is an underlying reason why Defendant refuses to return Plaintiff's funds. *Id*. at 10. Further, Plaintiff asserts that the meeting on February 8, 2023 occurred within Louisiana, and therefore the exercise of specific jurisdiction would be fair and reasonable. *Id*. at 11.

"On a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint, except as controverted by the defendants' affidavits, must be taken as true." *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir. 1982). This Court thus accepts, for the purposes of this motion, Plaintiff's allegation that he is domiciled in Louisiana rather than Costa Rica. However, the personal jurisdiction inquiry hinges on whether or not a defendant has "purposefully directed [his] activities at the forum state and the litigation results from alleged injuries that arise out of or

11

relate to those activities.'" *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001)). *See also Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d at 469. Because the inquiry focuses on the Defendant's targeting of a *forum*, the Court also considers Defendant's sworn allegation that he began investing Plaintiff's money when Plaintiff resided in Costa Rica, and that his conversations with Plaintiff occurred via email and telephone between their residences in Costa Rica and Georgia. R. Doc. 5-2 at 1-2. Plaintiff does not dispute these allegations, which weigh against a finding that Defendant intended to avail himself of Louisiana.

Two facts alleged by Plaintiffs come closer to making a *prima facie* case of Defendant's purposefully availing himself of the forum: first, that Plaintiff wired funds to Defendant from a Louisiana bank account; and second, that Defendant met with Plaintiff's representatives in Metairie, Louisiana on February 8, 2023. However, Plaintiff does not cite any cases that address similar facts, and the case law this Court could find does not suggest that either would be dispositive. For example, in *Patterson v. Dietze, Inc.*, the Fifth Circuit rejected a plaintiff's argument that "the telephone calls [defendant] made to Texas, the payments [defendant] wired to Texas, and the contracts [defendant] entered into with two Texas ship-owners supply the necessary minimum contacts between [defendant] and Texas" to support the exercise of jurisdiction over that defendant. 764 F.2d 1145, 1147 (5th Cir. 1985). In this instance, Defendant alleges in his sworn affidavit—and Plaintiff does not dispute—that the contacts between the parties other than bank transfers occurred between Georgia and Costa Rica, and that in 2017 the Plaintiff traveled to Georgia when he originally discussed his interest in investing cryptocurrency with Defendant. R. Doc. 5-2 at 1.

12

As to the February 8, 2023 meeting, courts have held that in the context of a breach of contract claim, "A meeting in the forum state may constitute 'purposeful availment' if it involves 'significant negotiations of important terms.'" *Crestview Farms, L.L.C. v. Cambiaso*, Civil Action No. 4:20-cv-01288-O, 2021 U.S. Dist. LEXIS 111441, at *14 (N.D. Tex. June 15, 2021) (citing *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 991 (11th Cir. 1986)). In this instance, however, the meeting was not related to the terms of the contract, but occurred after, Plaintiff alleges, he asked for his funds and Defendant failed to return them. R. Doc. 8-2 at 1. In addition—while the parties have starkly different accounts of what happened at the meeting and why it was called—they agree that Plaintiff requested the meeting and requested that Defendant come to Louisiana to meet Plaintiff. R. Doc 8-2 at 1; R. Doc. 5-2 at 4. This fact counsels against a finding that Defendant's attendance at this meeting constitutes a purposeful availment of the form of Louisiana, because "[t]he unilateral activity of [a plaintiff] who claim[s] some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State . . . ." *Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Finally, the Plaintiff does not cite any caselaw to support the notion that familial relations, or one's role as a beneficiary in a succession that occurred in a state thirty years prior to a claim arising, count as a party's intentional targeting of a forum. Because the evidence presented in Plaintiff's complaints and in the affidavits attached to the present motion and opposition indicate that the Defendant did not "purposefully direct" any activities towards the forum, this Court cannot find that the cause of action arises out of any such activities or that it would be fair and just to subject him to suit in this district. In this instance, there is no specific personal jurisdiction over Defendant in this forum, and it is appropriate for this Court to dismiss

13

this matter so that Plaintiff may file it in a forum in which the Defendant is subject to personal jurisdiction.

### IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Defendant's motion be **GRANTED**. The Clerk of Court is directed to **DISMISS** this action so that the Plaintiff may file in a more appropriate forum.

New Orleans, Louisiana, this 13th day of June, 2023.

_____
UNITED STATES DISTRICT JUDGE